|  |  | IN THE CIRCUIT COURT FOR THE NINTH JUDICIAL CIRCUIT IN AND FOR ORANGE COUNTY FLORIDA |
|---|---|---|
| KEVIN GANESH, | ) | |
| | ) | CASE NO. |
| Plaintiff, | ) | Judge |
| | ) | |
| vs. | ) | |
| | ) | |
| IMPERIAL BAG & PAPER, LLC, a | ) | |
| Delaware Limited Liability Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**COMPLAINT FOR DAMAGES**

Plaintiff, KEVIN GANESH, by and through his undersigned counsel, hereby files his Complaint for Damages and other relief against Defendant, IMPERIAL BAG & PAPER, LLC, and states as follows:

**INTRODUCTION**

1. This is an action for damages of more than $30,000.00, exclusive of costs and attorney's fees and is properly within the jurisdiction of this Court.

**JURISDICTION AND VENUE**

2. The court has jurisdiction over this matter, which arises under the Florida Civil Rights Act, § 760.10, *et seq.*, Florida Statutes.

3. Venue is proper in this Court pursuant to § 47.011, Fla. Stat., because the employment relationship upon which this action is based was entered into within Orange County, Florida and the claims arose in Orange County.

1

## PARTIES

4. At all times material, Plaintiff, KEVIN GANESH (hereafter Plaintiff or "GANESH"), was driver/manager for the Defendant and an "aggrieved person" under the FCRA, § 760.02(1)., Fla. Stat.

5. Defendant IMPERIAL BAG & PAPER, LLC ("Defendant" or "IMPERIAL DADE") is a Delaware Limited Liability Corporation and the leading independently owned and operated distributor of foodservice packaging, facilities maintenance supplies, and equipment in North America. Defendant's principal address is 5101 East Hanna Avenue, Tampa, Florida 33610 and the company operates several distribution facilities in the State of Florida, including the location at 2675 Directors Row, Orlando, FL 32809, where GANESH was employed, and is an "employer" as defined by the FCRA, § 760.02(7), Fla. Stat.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. All conditions precedent to the filing of this action have occurred, have been fulfilled or have been waived.

7. In accordance with the FCRA, § 760.11(1), Plaintiff dual-filed a Charge of Discrimination for national origin discrimination and retaliation with the United States Equal Employment Opportunity Commission (EEOC) and the Florida Commission on Human Relations (FCHR) on January 10, 2022. A copy of EEOC Charge No. 510-2022-02912 is attached hereto as Exhibit A.

8. On August 12, 2022, Defendant submitted a response to Plaintiff's EEOC Charge.

9. As of this date, the FCHR has failed to conciliate or determine whether there is reasonable cause within 180 days of the filing of EEOC Charge No. 510-2022-02912, thereby

entitling Plaintiff to proceed with the filing of a civil action in accordance with §§ 760.11(4) and (8), Fla. Stat. (1997).

10. Plaintiff has retained the undersigned attorney to represent him in this action and is obligated to pay his attorney a reasonable fee for his services in this matter.

## GENERAL FACTUAL ALLEGATIONS

11. GANESH was employed by IMPERIAL DADE from in or about February 2019 until his constructive termination on November 30, 2021.

12. Plaintiff was initially hired as a router and was promoted to a driver/manager in May 2020.

13. In August 2020, there was a union drive at the company led by the drivers which caused significant tension and hostility in the workplace between the drivers and management before a failed union certification vote in October 2020. Despite the failure to win the certification vote, a number of drivers remained angry and embittered following the elections and continued their efforts to disrupt the company's operations in an effort to have their demands met.

14. Plaintiff had been reassigned to the position of driver during the union certification vote, but after the election had concluded in the company's favor, GANESH was reassigned to his initial position as a router, where he was in charge of assigning routes to the angry drivers who had just lost the union vote.

15. When GANESH tried to do his job, a group of pro-union drivers became very hostile and aggressive towards him and targeted him for verbal harassment based on his national origin (West Indian/Guyana). As a person of West Indian national origin, Plaintiff had a darker skin color than the white and Hispanic drivers he was assigned to work with and over time, the harassment came to include slurs about appearance and his national origin. He was told by driver

Carlos Garcia that he "should be working at a 7-11," and on several occasions a driver named Johnny Torres called a "fucking Indian."

16. From November 2020 through his involuntary resignation on November 30, 2021 and even following his last day of work on December 9, 2021, GANESH complained to his supervisors on numerous occasions (both verbally and in writing) about the racial comments regarding his West Indian national origin and the hostility he was encountering from the drivers, but no remedial action was ever taken to investigate his complaints or deter the drivers from further discriminatory harassment. The local supervisors to whom GANESH complained included General Manager Rick Tabit, Operations Manager Joseph Thompson and Transportation Manager Greg Sepulveda, each of whom had a duty to enforce the company's anti-discrimination policies in the workplace and take remedial action if discrimination occurred.

17. When the drivers became aware of GANESH's complaints to management about the verbal harassment and discrimination and saw that management was not going to do anything to enforce the company's anti-discrimination policies or otherwise remedy the situation, they became emboldened and increased the frequency of their attacks on GANESH.

18. In addition to complaining to management, Plaintiff notified the office Human Resources employee, Naomi Diaz, about the discrimination he was facing from the drivers, in the hope that she might investigate or at least inform her manager at the corporate Human Resources office in Jersey City, New Jersey. Instead of taking remedial action or reporting the incidents to her manager, however, Ms. Diaz simply advised the drivers named by GANESH that he had filed complaints against them.

19. Upon information and belief, Ms. Diaz was terminated in 2020 for being "too friendly" with the drivers and then brought back by Defendant after the drivers demanded that she

be rehired. After her reinstatement, Plaintiff did not have any further conversations with her about the discrimination for fear that she would once again simply pass the information on to the drivers without doing her job or taking any remedial action under Defendant's policies.

20. On November 8, 2021, GANESH attended a meeting with managers Rick Tabit, Joseph Thompson and Gregory Sepulveda and a white driver/supervisor named Ricky Godbold, who was one of the individuals he had previously reported for slurs and verbal harassment about his West Indian national origin.

21. Despite the presence of three managers, Mr. Godbold was hostile and verbally abusive towards Plaintiff during the meeting, in flagrant violation of Defendant's policies regarding workplace conduct. He adopted an aggressive body posture as he profanely accused GANESH of not knowing how to do his job and defiantly told the three managers that he refused to work with Plaintiff going forward.

22. As GANESH was leaving the meeting, Mr. Godbold stood up, uttered additional profanities and rushed towards Plaintiff in an attempt to strike him. Mr. Godbold was so enraged that he had to be physically blocked and restrained by two of the managers, Rick Tabit and Gregory Sepulveda.

23. Plaintiff was shaken by Ricky Godbold's actions during the meeting and management's failure to do anything about it. Even though the incident had already been witnessed by three managers, he reported it in writing that day and begged for some sort of remedial action be taken to end the discrimination and verbal harassment and ensure his physical safety in the workplace.

24. Despite his prior complaints about discrimination and verbal harassment from Mr. Godbold and others and the fact that three managers had witnessed Mr. Godbold's verbal abuse of

GANESH and had to restrain him from physically attacking Plaintiff in their presence, no remedial action was taken after the meeting to investigate the incident, discipline Mr. Godbold or ensure Plaintiff's safety in the workplace going forward.

25. Because Defendant once again failed to investigate or take remedial action in response to the incident with Mr. Godbold, GANESH was subjected to additional discriminatory comments and abusive treatment by the drivers following the November 8, 2021 meeting.

26. GANESH was still waiting for a response to his complaint and his request for protection from further discrimination and threats of violence when his workplace was visited by Mark Davis, Defendant's Regional Manager, in late November 2021. At one point during his tour of the facility, Mr. Davis stopped to engage Plaintiff in a brief conversation about his work and to thank GANESH for doing a good job for the company. During their conversation, a white driver named David Labranche approached them uninvited and called GANESH a "fucking idiot" before launching into a profane and insubordinate tirade about Plaintiff not knowing how to do his job.

27. Although Mr. Davis witnessed this entire exchange, during which Mr. Labranche violated multiple company policies regarding unacceptable workplace conduct, he did nothing whatsoever to stop the verbal attack. Instead, he just stood there until Mr. Branche was finished and then ignored GANESH's verbal and subsequent written requests to have Mr. Labranche investigated and disciplined for his actions.

28. Ironically, a few weeks after the incident with Rick Godbold on November 8, 2021, Defendant terminated a Hispanic driver named Johnny Torres for using racial slurs towards a Black employee. By contrast, management simply ignored Plaintiff's multiple complaints about similar slurs from Mr. Torres and others about his national origin during the prior twelve months,

even though the conduct about which GANESH complained was equally violative of Defendant's anti-discrimination policies.

29. After more than a month had passed without any remedial action or assurances that he would be protected from future discrimination and violence in the workplace, GANESH felt that he had no reasonable choice but to advise Regional Manager Mark Davis in writing of his involuntary resignation on November 30, 2021.

30. In his resignation email, GANESH advised Mr. Davis that "[i]t has been a rough past 3 years, but I have always conducted myself as professional as possible during all the tribulations and did what's best for our Transportation Operation. It has been a pleasure working with you and I wish the circumstances where different, but ultimately, I don't see any changes here happening soon. The culture here is far from what it should be. I will continue to give you and our CF location the best of me until I depart."

31. Mr. Davis responded via email to the resignation the same day it was sent, saying "[s]orry to hear that you will be leaving us. Not sure what you mean by the culture and the changes. I will try to make it to Orlando next weekend we can discuss what you mean by that."

32. Plaintiff saw Mark Davis on December 9, 2021, his last day on the job. Mr. Davis never spoke to him about their email exchange on November 30, 2021 so Plaintiff sent him an email later that day in which GANESH advised Mr. Davis that he had resigned under duress because he "was put in several predicaments of being discriminated against, having my accrued time being stolen, harassed and threatened and asked to jeopardize others health." He further related the events of the meeting on November 8, 2021 when Rick Godbold had to be restrained by management from physically assaulting him and how management took no action to

investigate, discipline or even deter Mr. Godbold for his actions, or to reassure Plaintiff that he would not be threatened with violence in the workplace again by Mr. Godbold.

33. When Mark Davis failed to respond to Plaintiff's email explaining the reasons for his involuntary resignation, GANESH forwarded his email on December 10, 2021 to Alexandra Berkowitz, Defendant's Vice President of Human Resources, at the company's corporate offices in Jersey City, New Jersey. .

34. Ms. Berkowitz responded to GANESH's email the same day it was sent, promising to "review the information you have provided and take the necessary steps to address your claim/concerns."

35. On December 13, 2021, Plaintiff had a brief phone call and another email exchange with Ms. Berkowitz, who indicated that she still had to interview several employees before she could get back to Plaintiff to continue their conversation about the reasons for his resignation.

36. GANESH received no further communications from Ms. Berkowitz or anyone else on behalf of Defendant following their phone call and email exchange on December 13, 2021.

## COUNT I

### Violation of §760.10, Florida Statutes
### National Origin Discrimination

37. Plaintiff realleges paragraphs 1 through 36 as if fully set forth herein.

38. The conduct of Defendant more particularly alleged at Paragraphs 11 to 36 above constitute a violation of the Florida Civil Rights Act of 1992, Chapter 760.10(1)(a), Fla. Stat., which makes it an unlawful employment practice for an employer to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's national origin.

39. Due to Plaintiff's national origin (West Indian/Guyana) Defendant allowed, suffered and permitted GANESH's workplace to become so discriminatory, verbally abusive and hostile that no reasonable person would continue to work under such intolerable and unsafe conditions.

40. Plaintiff has suffered damages as a result of Defendant's unlawful conduct, including, but not limited to, loss of pay and benefits, emotional distress and other intangible injuries.

41. The conduct of Defendant was willful and wanton, and in such reckless disregard of Plaintiff's rights under FCRA, that Plaintiff should additionally be awarded punitive damages, in an amount to be determined by the factfinder at trial.

WHEREFORE, Plaintiff, KEVIN GANESH, requests the entry of judgment in his favor:

A. Declaring Defendant's conduct to be in violation of the FCRA;

B. Awarding Plaintiff back pay and and/or front pay in lieu of reinstatement;

C. Awarding Plaintiff compensatory damages, in an amount to be determined by the factfinder at trial;

D. Awarding Plaintiff punitive damages for Defendant's violations of his rights under the FCRA

E. Awarding Plaintiff his costs and reasonable attorney's fees pursuant to § 760.11, Fla. Stat., and;

F. Granting such other and further relief as may be deemed just and proper.

## COUNT II

### Violation of §760.10, Florida Statutes
### Retaliation

42. Plaintiff realleges paragraphs 1 through 36 as if fully set forth herein.

9

43. The conduct of Defendant more particularly alleged at Paragraphs 16 to 36 above constitute a violation of the Florida Civil Rights Act of 1992, Chapter 760.10(1)(a), Fla. Stat., which makes it an unlawful employment practice for an employer to discriminate against any individual because that person has opposed an unlawful employment practice or otherwise engaged in protected activity under the FCRA.

44. Plaintiff's complaints regarding verbal abuse and harassments based on his national origin (West Indian/Guyana) and his written complaints following the physical threats and assault by Ricky Godbold during the November 8, 2021 meeting constitute protected activity under the FCRA.

45. As a result of Plaintiff's protected activity, and by its repeated inaction in the face of such protected activity during the final year of Plaintiff's employment, Defendant allowed, suffered and permitted GANESH's workplace to become so discriminatory, verbally abusive and hostile that no reasonable person would continue to work under such intolerable and unsafe conditions.

46. Plaintiff has suffered damages as a result of Defendant's unlawful conduct, including, but not limited to, loss of pay and benefits, emotional distress and other intangible injuries.

47. The conduct of Defendant was willful and wanton, and in such reckless disregard of Plaintiff's rights under FCRA, that Plaintiff should additionally be awarded punitive damages, in an amount to be determined by the factfinder at trial.

WHEREFORE, Plaintiff, KEVIN GANESH, requests the entry of judgment in his favor:

A. Declaring Defendant's conduct to be in violation of the FCRA;

B. Awarding Plaintiff back pay and and/or front pay in lieu of reinstatement;

    C.    Awarding Plaintiff compensatory damages, in an amount to be determined by the factfinder at trial;

    D.    Awarding Plaintiff punitive damages for Defendant's violations of his rights under the FCRA

    E.    Awarding Plaintiff his costs and reasonable attorney's fees pursuant to § 760.11, Fla. Stat., and;

    F.    Granting such other and further relief as may be deemed just and proper.

Respectfully submitted,

*Christopher C. Sharp*
Christopher C. Sharp, Esq.
Florida Bar No.: 996858
Email: csharplaw@aol.com
Alternate email: chris@csharplawfirm.com
SHARP LAW FIRM, P.A.
1600 West State Road 84, Suite C
Fort Lauderdale, Florida 33315
Phone: (954) 909-4246
Fax: (954) 827-8028
**Attorney for Plaintiff**

Dated: November 7, 2022